UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| SUSAN MICIOTTO | CIVIL ACTION NO. 6:19-cv-00735 |
| VERSUS | JUDGE DOUGHTY |
| HOBBY LOBBY STORES, INC. | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Currently pending is the motion to remand (Rec. Doc. 5) that was filed by the plaintiff, Susan Miciotto. The motion is opposed. (Rec. Doc. 8). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be denied.

## Background

This lawsuit originated in the 15th Judicial District Court, Lafayette Parish, Louisiana. It was removed by the defendant, Hobby Lobby Stores, Inc. In its removal notice, Hobby Lobby alleged that the court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the statutory minimum. Hobby Lobby based its jurisdictional allegation of diversity on its contention that the two individual defendants were improperly joined.

In her original petition for damages, the plaintiff, Susan Miciotto, alleged that she was injured on November 20, 2017, when she slipped and fell on a warped or broken expansion joint that protruded above the concrete surface of the exterior walkway of the Hobby Lobby store in Lafayette, Louisiana. She sued Hobby Lobby and an unidentified Hobby Lobby employee "with direct responsibility over the premises of Hobby Lobby Stores, Inc. for the inspection, discovery, repair, and/or warning against the hazardous condition complained of in this suit."[1] In her first supplemental and amending petition, the plaintiff added Allen Calais and Michelle Savoy as defendants, alleging that they had "direct responsibility over the premises of Hobby Lobby Stores, Inc. for the inspection, discovery, repair, and/or warning against the hazardous condition complaint of in this suit."[2] Hobby Lobby argued in its removal notice that Mr. Calais and Ms. Savoy were improperly joined as defendants and that their citizenship should not be considered in determining whether the court has subject-matter jurisdiction over this action. The plaintiff responded with the instant motion to remand, arguing that the court lacks subject-matter jurisdiction because Mr. Calais and Ms. Savoy are citizens of Louisiana who are not diverse in citizenship from the plaintiff, who is also a Louisiana citizen.

---

[1]   Rec. Doc. 1-1 at 3.

[2]   Rec. Doc. 1-2 at 3.

## Law and Analysis

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[3] Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[4] A federal court has "diversity jurisdiction" when the amount-in-controversy exceeds $75,000 exclusive of interest and costs, and the citizenship of the plaintiff is diverse from that of all of the defendants.[5] A removing party bears the burden of establishing diversity jurisdiction.[6] "Any ambiguities are construed against removal and in favor of remand to state court."[7]

### A.   The Amount in Controversy

The plaintiff did not dispute the defendant's allegation that the amount-in-controversy requirement is satisfied in this case. The amount in controversy is the sum claimed by the plaintiff in his complaint if the claim was apparently made in

---

[3]   See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[4]   28 U.S.C. § 1447(c).

[5]   See 28 U.S.C. § 1332(a).

[6]   *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[7]   *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d at 397 (citing *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d at 723, and *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

good faith.[8] To justify remand, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."[9] When the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.[10] This burden can be satisfied either by demonstrating that the amount in controversy is facially apparent from the plaintiff's pleadings or by setting forth the facts in controversy, with summary-judgment-type evidence, that support a finding of the requisite amount.[11] "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [the jurisdictional amount]."[12] Thus, the district court must first examine the complaint to determine whether it is facially apparent that the plaintiff's claims exceed the jurisdictional threshold; if it is not facially apparent, the

---

[8] *St. Paul Reinsurance v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992).

[9] *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253, quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

[10] *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[11] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1335.

[12] *De Aguilar v. Boeing*, 47 F.3d at 1412 (emphasis in original).

court may then rely on summary-judgment-type evidence to ascertain the amount in controversy.[13] Any doubts as to the propriety of removal should be construed strictly in favor of remand.[14]

In this case, the amount in controversy was not apparent on the face of the plaintiff's original or amended petitions. However, along with its removal notice, Hobby Lobby submitted the plaintiff's responses to interrogatories in which she argued that her injuries are similar to those in reported cases where general damages exceeding $75,000 were awarded.[15] Hobby Lobby submitted the plaintiff's responses to written discovery requests in which she stated that she sustained injuries including bruising, short-term memory loss, concussion, post-concussion syndrome, and required a hard cast on her hand.[16] Hobby Lobby also submitted the plaintiff's discovery responses indicating that she was continuing to experience memory loss, had difficult time focusing, and suffered from depression.[17] The plaintiff's discovery responses indicate that she has treated with nineteen separate health care providers

---

[13]   *Luckett v. Delta Airlines*, 171 F.3d at 298; *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1335.

[14]   *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723.

[15]   Rec. Doc. 1-7 at 12.

[16]   Rec. Doc. 1-7 at 5.

[17]   Rec. Doc. 1-7 at 5.

for the injuries allegedly sustained in the subject accident.[18] Medical records produced by the plaintiff in discovery and submitted by Hobby Lobby in support of its removal notice show that the plaintiff has treated with an orthopedist, a neurosurgeon, a neuropsychologist, and a psychiatrist; she has also undergone physical therapy and vestibular therapy.[19] Among the submitted medical records are evidence that an MRI showed multilevel disc bulges in her cervical spine[20] and evidence that she was diagnosed with mild traumatic brain injury with persistent cognitive impairment.[21] Due to the nature of the plaintiff's injuries, the number of health care professionals consulted by the plaintiff following the accident, and the type of the medical treatment she has received, this Court finds that the removing defendant has satisfied its burden of establishing that the amount in controversy exceeds the jurisdictional threshold.

## B. **Diversity of Citizenship**

The parties to this lawsuit are not diverse in citizenship. In her petition, the plaintiff alleged that she is domiciled in Louisiana. The citizenship of a natural

---

[18] Rec. Doc. 1-7 at 6-7.

[19] Rec. Doc. 1-8 at 4-15.

[20] Rec. Doc. 1-8 at 5.

[21] Rec. Doc. 1-8 at 6, 14.

person is determined by the state in which she is domiciled.[22] Therefore, the plaintiff is a Louisiana citizen. In the removal notice, Hobby Lobby alleged that it was incorporated in Oklahoma and has its principal place of business in Oklahoma.[23] A corporation's citizenship is determined by its state of incorporation and the state of its principal place of business.[24] Therefore, Hobby Lobby is a citizen of Oklahoma. In the amended complaint, the plaintiff alleged that Mr. Calais and Ms. Savoy are persons "whose parish of domicile is presently unknown."[25] The inference to be drawn from the plaintiff's use of the word "parish" in the jurisdictional allegations is that both Mr. Calais and Ms. Savoy are domiciled in Louisiana and, therefore, are Louisiana citizens. In her briefing, the plaintiff again alleged that Mr. Calais and Ms. Savoy are Louisiana citizens.[26] In its briefing, Hobby Lobby referred to Mr. Calais and Ms. Savoy as nondiverse defendants[27] and offered no evidence that they are citizens of any other state. This Court therefore concludes that Mr. Calais and

---

[22]  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

[23]  Rec. Doc. 1 at 4.

[24]  28 U.S.C. § 1332(c)(1).

[25]  Rec. Doc. 1-2 at 3.

[26]  Rec. Doc. 5-1 at 2.

[27]  Rec. Doc. 8 at 1.

Ms. Savoy are citizens of Louisiana and further concludes that they are not diverse in citizenship from the plaintiff.

## C. Improper Joinder

In opposition to the plaintiff's motion to remand, Hobby Lobby argued that Mr. Calais and Ms. Savoy sharing the same citizenship with the plaintiff does not destroy the court's subject-matter jurisdiction because Mr. Calais and Ms. Savoy were improperly joined as defendants in this lawsuit. The doctrine of improper joinder is a narrow exception to the complete diversity requirement.[28] The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"[29] "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[30]

To establish improper joinder, Hobby Lobby must prove either actual fraud in the pleading of jurisdictional facts, or the plaintiff's inability to establish a cause of action against the nondiverse party in state court.[31] Here, there is no allegation of actual fraud. Therefore, the test for improper joinder is "whether the defendant has

---

[28] *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

[29] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

[30] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 573.

[31] *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).

demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[32]

A defendant who contends that a nondiverse party is improperly joined has a heavy burden of proof.[33] The court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.[34] The sufficiency of a plaintiff's state-court petition for purposes of the improper joinder analysis is measured under federal court pleading standards.[35] Thus, the analysis used to determine whether a defendant is improperly joined is the same as that used to determine whether a claim has been stated under Fed. R. Civ. P. 12(b)(6). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[36]

---

[32] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573(citing *Travis v. Irby*, 326 F.3d at 648).

[33] *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

[34] *Green v. Amerada Hess*, 707 F.2d at 205; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

[35] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).

[36] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573.

Under that standard, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[37] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[39] As part of this analysis, the court must proceed in two steps. First, the court must separate legal conclusions from well-pleaded facts.[40] Second, the court must review the well-pleaded factual allegations, assume them to be true, and then determine whether they "plausibly give rise to an entitlement of relief."[41] "[A] single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."[42]

---

[37] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[39] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

[40] *Ashcroft v. Iqbal*, 556 U.S. at 678-79.

[41] *Ashcroft v. Iqbal*, 556 U.S. at 679.

[42] *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In deciding whether a defendant was improperly joined, a court must proceed as follows:

> First, a court looks at the allegations contained in the complaint. If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder. When "a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder. . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" "[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court."[43]

Thus, a court, in its discretion, must either conduct a Rule 12(b)(6)-type analysis, or pierce the pleadings and conduct a summary inquiry.[44]

Importantly, a "summary inquiry" should not be confused with a "summary judgment inquiry." In a summary inquiry, the court considers summary-judgment type evidence, but "the standard for finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal."[45] Instead, the removing defendant must affirmatively preclude the possibility of

---

[43] *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (internal citations omitted).

[44] See *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d at 207.

[45] *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d at 766.

11

recovery.[46] In a summary inquiry, any contested issues of fact and any ambiguities of state law must be resolved in the non-removing plaintiff's favor.[47]

The claim asserted against Mr. Calais and Ms. Savoy in this case is indistinguishable from the claim asserted against their alleged employer, Hobby Lobby. The plaintiff alleged that Hobby Lobby, Mr. Calais, and Ms. Savoy all owed a duty to the patrons of the store where the incident allegedly occurred to exercise reasonable care to keep the store's premises in a reasonably safe condition and to warn of hazardous conditions. There is no allegation in the original or amended petitions suggesting that Mr. Calais or Ms. Savoy owed any duties separate from the duties allegedly owed by Hobby Lobby.

The analysis set forth in *Canter v. Koehring Co.*[48] governs whether Mr. Calais and Ms. Savoy may be held personally liable in this case.[49] Under *Canter*, an employee is personally liable only when (1) the employer owes a duty of care to a third party, the breach of which has caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the defendant employee; (3) the

---

[46]  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d at 766.

[47]  *Travis v. Irby*, 326 F.3d at 649.

[48]  *Canter v. Koehring Co.*, 283 So.2d 716, 721 (La. 1973), superseded by statute on other grounds, La. R.S. 23:1032.

[49]  See, e.g., *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th 2009).

12

employee breached the duty through personal (not technical or vicarious) fault; and (4) the employee cannot be held liable because of his general administrative responsibility for performance of some function of the employment. Therefore, "in order for an individual employee to be liable to a third person, the plaintiff must show that the employee breached an independent, personal duty to the customer."[50]

"Among the requirements for imposing personal liability on a managerial employee is that he breached his duty through personal rather than technical or vicarious fault. Such fault cannot be imposed upon the employee simply because of his general administrative responsibilities. Because of these requirements, courts have routinely held that retail store and restaurant managers were not personally liable for a customer's injury on a store premises when the manager had no connection to the accident other than general managerial responsibilities."[51]

In this case, the plaintiff alleged that Mr. Calais and Ms. Savoy are Hobby Lobby employees. The plaintiff did not allege the capacity in which either of them is employed or the duties assigned to them.[52] The plaintiff did not identify any

---

[50] *Brady v. Wal-Mart Stores, Inc.*, 907 F.Supp. 958, 960 (W.D. La. 1995).

[51] *Watson v. Daniel*, No. 14-cv-1122, 2015 WL 737650, at *4 (W.D. La. Jan. 9, 2015), report and recommendation adopted, 2015 WL 737048 (W.D. La. 2015).

[52] By searching through the record – not the plaintiff's complaints or the briefing submitted with regard to the pending motion – this Court found evidence that Mr. Calais was the local Hobby Lobby store manager while Ms. Savoy was the front end manager. (Rec. Doc. 6-3 at 43).

particular Hobby Lobby stores where these employees work. Instead, the plaintiff generally alleged that they have "direct responsibility over the premises of Hobby Lobby Stores, Inc. for the inspection, discovery, repair, and/or warning against the hazardous condition complained of in this suit."[53] There is no allegation in the original or amended complaint differentiating these employees' duties from those of Hobby Lobby.

Indeed, in her briefing, the plaintiff argued that Mr. Calais and Ms. Savoy are liable to her under the Louisiana Merchant Liability Act, La. R.S. 9:2800.6. But that statute imposes a duty on a merchant or shop owner; it does not impose duties on the individual employees who work in the shop. That distinction is precisely what the *Canter* case addresses.

When the allegations set forth in the plaintiff's complaints are compared against the requirements of *Canter*, it is clear that the plaintiff's allegations are insufficient to impose individual liability on Mr. Calais and Ms. Savoy. While the plaintiff alleged that Mr. Calais and Ms. Savoy owed a duty of care to her, the plaintiff did not allege that any duty was specifically delegated by their employer to these particular employees and no evidence was presented by the plaintiff in support of any such potential allegation. Second, there is no allegation that Mr. Calais or

---

[53] Rec. Doc. 1-2 at 3.

14

Ms. Savoy personally breached a duty that they owed to the plaintiff through personal rather than technical or vicarious fault. For example, there are no allegations that Mr. Calais or Ms. Savoy was personally aware of the alleged condition of the area where the plaintiff allegedly fell, no allegation that either of them caused that condition to exist, no allegation that either of them personally failed to remedy that condition, and consequently no allegation that either of them could have warned the plaintiff or others of the condition. Furthermore, under *Canter*, an employee cannot be held liable because of his general administrative responsibility for performance of some function of the employment. But that is all the plaintiff has alleged in this case: that Mr. Calais and Ms. Savoy, as managers of the Hobby Lobby store, had a general administrative responsibility for the area where the accident allegedly occurred.

The plaintiff attempted to remedy the shortcoming in her briefing by submitting portions of a document alleged to set forth Hobby Lobby's store policies along with her reply brief. This document will not be considered for two reasons. First, there is no affidavit or declaration authenticating the document as store policies in effect at the Lafayette Hobby Lobby store on the date of the accident. Second, the document was submitted along with the plaintiff's reply brief. This Court ordinarily does not consider arguments raised for the first time in a reply brief

because the non-moving party does not have a meaningful opportunity to respond.[54] Similarly, evidentiary exhibits submitted along with a reply brief generally are not considered because the non-moving party does not have a meaningful opportunity to respond.[55] Accordingly, neither the document itself nor the argument that the document creates duties personal to Mr. Calais or Ms. Savoy will be considered by this Court.

For an employee of a defendant entity to be liable, he must owe a personal duty to the plaintiff that did not arise out of the defendant employee's general administrative responsibilities. No such personal duty has been identified in this case. The plaintiff did not allege that Mr. Calais or Ms. Savoy owed or breached a personal duty to Ms. Miciotto that arose outside the scope of the duties for which Hobby Lobby is vicariously liable. Accordingly, this Court finds that the removing defendants met their burden of showing that the plaintiff has no reasonable possibility of recovery against Mr. Calais and Ms. Savoy and, therefore, that Mr. Calais and Ms. Savoy were improperly joined as defendants in this action.

---

[54] *Gillaspy v. Dallas Independent School Dist.*, 278 Fed. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.") (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989)); *United States v. Aguirre-Villa*, 460 F.3d 681, 683 n. 2 (5th Cir. 2006); *United States v. Jackson*, 50 F.3d 1335, 1340 n. 7 (5th Cir. 1995) ("It is well-settled that, generally, we will not consider issues raised for the first time in a reply brief.");

[55] *Skelton v. Iberia Parish School Board*, 2017 WL 4228724, at *3 (citing *Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991)).

When Mr. Calais's and Ms. Savoy's citizenship is disregarded, as it must be since they were improperly joined, the plaintiff and the remaining defendant are diverse in citizenship. Having found that the amount in controversy exceeds the jurisdictional minimum and that the properly joined parties are diverse in citizenship, the undersigned finds that this Court has subject-matter jurisdiction over this matter, under 28 U.S.C. § 1332.

Having found that the plaintiff has no reasonable possibility of recovery against the nondiverse defendants, Mr. Calais and Ms. Savoy, it is recommended that summary judgment be entered *sua sponte* in favor of Mr. Calais and Ms. Savoy and against the plaintiff, dismissing the plaintiff's claims against Mr. Calais and Ms. Savoy. "Summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery."[56] However, it is recommended that the claim against Mr. Calais and Ms. Savoy be dismissed without prejudice. As the Fifth Circuit has explained, "the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal *without* prejudice in every instance."[57]

---

[56] *Carriere v. Sears*, 893 F.2d 98, 102 (5th Cir. 1990). See, also, Rule 56(f)(3) of the Federal Rules of Civil Procedure.

[57] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d at 210 (emphasis in original).

### D.     Attorneys' Fees

The plaintiff included in her motion a request for the recovery of attorneys' fees. Having found that the plaintiff's motion should be denied, there is no basis for the recovery of attorneys' fees by the plaintiff.

### Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion to remand (Rec. Doc. 5) should be DENIED;

IT IS FURTHER RECOMMENDED that the plaintiff's claims against Allen Calais and Michelle Savoy should be dismissed without prejudice; and

IT IS FURTHER RECOMMENDED that the plaintiff's claim for attorneys' fees should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[58]

Signed at Lafayette, Louisiana, this 8th day of August 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[58] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).