UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| SUSAN MICIOTTO | * | DOCKET NO. 6:19-cv-00735 |
| | * | |
| vs. | * | JUDGE TERRY A DOUGHTY |
| | * | |
| HOBBY LOBBY STORES, INC. | * | MAGISTRATE JUDGE PATRICK J. |
| | * | HANNA |

---

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

May it please the court;

The Plaintiff, SUSAN MICIOTTO, has filed herewith a Motion for Partial Summary Judgment pursuant to Federal Rules of Civil Procedure, Rule 56.  There exists no genuine issue of material fact and Plaintiff is entitled to judgment finding Hobby Lobby Stores, Inc., liable for the accident under the Louisiana Merchant Liability Act, La. R.S. 9:2800.6.  On November 30, 2017, Plaintiff sustained a fall on the premises of Hobby Lobby due to the presence of a hazardous condition at the entrance/exit, a split and raised wooden expansion joint which protruded above the walking surface of the concrete sidewalk.  This hazardous condition was known to exist prior to the accident, yet Hobby Lobby took no action to repair, warn, or guard against this condition.

## FACTUAL BACKGROUND

During the afternoon of November 30, 2017, Plaintiff arrived at the Hobby Lobby store in Lafayette, Louisiana for the purpose of purchasing some crayons for her grandchild.  Upon exiting, and while walking across the concrete sidewalk, Plaintiff stubbed her toe, lost her balance, and fell to the ground.  Customers rushed to her assistance and identified "this piece of wood that is sticking

up" as the cause of her fall.[1]  When the manager came to the scene, the decision was made to tape over the broken wood to prevent someone else from falling.[2]  Later, Plaintiff was brought into the store because she felt she needed to sit down.[3]

Plaintiff was assisted at the scene by customers, Stephanie Cummings and Sharon Cummings, who were both eyewitnesses to the fall.  Both approached the store entrance from the parking lot and saw Plaintiff's foot get caught on something.[4]  Stephanie Cummings identified the wood sticking up out of the concrete as the cause of the fall.[5]  The wood was at least two inches off of the surface when contacted by Plaintiff's foot.[6]  Thurston Hall, another Hobby Lobby employee, also witnessed the accident and saw Plaintiff trip over the broken piece of wood.[7]

A Hobby Lobby employee came to assist at the scene and brought a chair for Plaintiff to sit in.[8]  This employee, later determined to be Kelly Fanguy,[9] stated at the scene that she knew the wood was sticking up out of the concrete before the accident.[10]  Fanguy admitted to receiving a prior complaint about the same piece of wood Plaintiff tripped over.[11]  No warning of this known hazardous condition was present.

Angela Akmenkalns was another Hobby Lobby employee who assisted at the scene.  She was the employee who taped down the broken piece of wood after the accident.[12]  Ms. Akmenkalns confirmed the testimony of Stephanie Cummings regarding Hobby Lobby's admission of prior

---

[1] Exhibit A, Deposition of Susan Miciotto, p. 155, 160-161
[2] Id., at pp. 158-159
[3] Id., at  p. 161
[4] Exhibit B, Deposition of Stephanie Cummings, pp. 43-56
[5] Id., at pp. 101-107, 140
[6] Id., at p. 102
[7] Exhibit C, Deposition of Thurston Hall, p. 27
[8] Exhibit D, Affidavit of David J. Calogero with attached screen shots showing Hobby Lobby employee with chair.
[9] Exhibit E, 30(b)(6) Deposition of Hobby Lobby Stores, Inc., Exhibit 11, Answer to Interrogatory no. 12
[10] Exhibit B, at p. 109
[11] Id. at pp. 115-116, 130, 148
[12] Exhibit F, Deposition of Angela Akmenkalns, p. 8

knowledge of the hazard and identified Kelly Fanguy as stating at the scene that she (Fanguy) had previously reported the broken piece of wood to management and told management that somebody was going to trip over it.[13]

Chad Canova was a co-manager at Hobby Lobby on the date of incident.  He was called to the accident scene, conducted an investigation, and completed the accident report.[14]  He determined in his investigation that "As Mrs. Miciotto was leaving the store, she tripped over a board on the sidewalk."[15]  A single photograph was taken of the accident scene which revealed the split and raised wooden expansion joint.[16]

Chad Canova was also produced as the 30(b)(6) representative of Hobby Lobby and gave a deposition on July 2, 2020.[17] Canova described accident prevention and safety policies as follows:

    a.  Hobby Lobby has a duty to customers to maintain a safe premises, especially at the entrances and exits which have the highest customer traffic.[18]

    b.  Entrances and exits are checked on a regular basis.  Employees are responsible to check for hazards when entering and exiting the store. [19]

    c.  All employees enter from the front door when arriving at work.[20]

    d.  All employees are responsible to be on the lookout for hazards at all times. The customer service manager, Kelly Fanguy, has more responsibility because she runs the front end.[21]

    e.  All employees are responsible for maintaining and warning of hazards in the parking lot and on the premises while at work.[22]

---

[13] Id., at pp. 10-14, 41-43
[14] Exhibit E, 30(b)(6) exhibit 18
[15] Id., 30(b)(6) exhibits 18, 20
[16] Id., 30(b)(6) exhibit 19
[17] Exhibit E
[18] Id., at pp. 21-22
[19] Id., at p. 26
[20] Id., at p. 33
[21] Id., at pp. 55-56
[22] Id., at pp. 59-60; 30(b)6) exhibit 9

f.   Every employee has responsibility for his/her work area.  The customer service manager has responsibility for the front end, including entrances and exits.[23]

g.   Building maintenance is the responsibility of all employees who should report a problem.[24]

h.   Under general safety training, all employees are responsible for safety and maintenance of the store.  If they notice something, they should pick it up or contact maintenance if the store cannot fix it on its own.[25]

i.   All employees must notify a manager if they find a hazard on the premises.  Employees must remain with the hazard until it is removed.  Warning cones are also used.[26]

j.   Customer safety is the highest priority at Hobby Lobby.[27]

k.   Failing to perform assigned duties is unacceptable behavior.  Assigned duties include premises safety and always being attentive to the work environment.  This includes keeping a lookout for anything that would be a trip and fall hazard.[28]

l.   "Good housekeeping is essential in preventing slips, trips and falls.  Most injuries can be prevented by paying attention to what you're doing, where you going, and what you encounter along the way."[29]

m.   "The key to preventing an accident is simply good housekeeping.  Every employee should feel personally responsible for noticing, reporting and/or correcting conditions that could potentially cause a slip, trip or fall.  Stay alert.  Watch for uneven floor surfaces.  If tiles are loose, or rug edges are turned up, they should be fixed immediately.  If you notice any of these problems bring it to your manager's attention for prompt correction."[30]

n.   "It is the Managers' responsibility to maintain the store.  When building or equipment repairs are necessary, call the Facilities Call Center … with your maintenance and repair needs.  The Maintenance Department will determine where the responsibility lies and start the necessary steps to handle the repairs."[31]

---

[23] Id., at p. 82
[24] Id., at p. 83
[25] Id., at pp. 88-89
[26] Id., at pp. 91-92
[27] Id., at pp. 101-102
[28] Id., at pp. 103-104
[29] Id., at p. 123, 30(b)(6) exhibit 23
[30] Id., at. p. 157, 30(b)(6) exhibit 29
[31] Id., 30(b)(6) exhibit 14, p. 23

In preparation for trial, Plaintiff retained the services of John L. "Jay" Chase, AIA, to render an expert report evaluating the condition of the Hobby Lobby premises.  Chase is of the opinion that the wooden expansion joint involved in this accident was constructed improperly, permitting intrusion of water and deterioration of the joint over time.  The lack of maintenance and faulty construction led to the wood being raised at the location of the accident.  In Chase's opinion, the raised wood presented a tripping hazard.[32]

## LAW AND ARGUMENT

a.  Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." [33]  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[34]

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.[35]  When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the

---

[32] Exhibit G, Affidavit of John L. "Jay" Chase, AIA, and attached expert report
[33] FED. R. CIV. PROC. 56(b)
[34] FED. R. CIV. PROC. 56(c).
[35] FED. R. CIV. PROC. 56(e).

burden of proof at trial.[36]  Only when "there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party" is a full trial on the merits warranted.[37]  In ruling upon

a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the

non-moving party" only in the sense that, where the facts specifically averred by that party

contradict facts specifically averred by the movant, the motion must be denied. That is a world

apart from "assuming" that general averments embrace the "specific facts" needed to sustain the

complaint. Rule 56(e) provides that judgment "shall be entered" against the nonmoving party

unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue

for trial."  The object of this provision is not to replace conclusory allegations of the complaint or

answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a

party who believes there is no genuine dispute as to a specific fact essential to the other side's case

to demand at least one sworn averment of that fact before the lengthy process of litigation

continues. [38]

b.  Louisiana Merchant Liability Act, R.S. 9:2800.6

La. R.S. 9:2800.6 states:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to

keep his aisles, passageways, and floors in a reasonably safe condition.  This duty includes a

reasonable effort to keep the premises free of any hazardous conditions which reasonably might

give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's

premises for damages as a result of an injury, death, or loss sustained because of a fall due to a

---

[36] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

[37] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

[38] *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888–89 (1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care.  In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.  For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.[39]

---

[39] La.Rev.Stat. § 9:2800.6

    c.  There is no genuine issue of material fact as to each element of Plaintiff's cause of action under R.S. 9:2800.6. Hobby Lobby is liable for Plaintiff's accident.

Plaintiff carries the entire burden of proof under R.S. 9:2800.6 and Plaintiff has met her burden of proof as to each element.  Therefore, Plaintiff is entitled to Partial Summary Judgment on the issue of liability.  Hobby Lobby can raise no genuine issue as to any element of Plaintiff's cause of action.

   1.  Plaintiff sustained a fall due to a condition existing on the Hobby Lobby premises.[40]

   2.  The condition presented an unreasonable risk of harm. [41]

   3.  The risk of harm was reasonably foreseeable.[42]

   4.  Hobby Lobby had actual notice of the condition prior to the accident.[43]

   5.  Hobby Lobby failed to exercise reasonable care.  No warning or other remedial action was taken in violation of Hobby Lobby policies and procedures.[44]

The evidence is uncontested that, while at the scene, Kelly Fanguy made a statement to Angela Akmenkalns which was overheard by Stephanie Cummings.  Kelly Fanguy stated that she had previously reported the hazardous condition to management and was concerned that someone could fall on it.  This statement is corroborated by two witnesses.

As of this dictation, the deposition of Kelly Fanguy has not been taken due to limitations secondary to COVID-19 requested by defense counsel.  Kelly Fanguy is still an employee of Hobby Lobby, which requires defense counsel to be present at the deposition, but defense counsel is not traveling at this time.  Nevertheless, the statement of the Kelly Fanguy is not hearsay and is

---

[40] Exhibit A, p. 155; Exhibit B, pp. 43-56
[41] Exhibit G
[42] Exhibit F, p. 10-14, 41-43
[43] Exhibit B, p. 109, 115-116, 130, 148
[44] Exhibit E, pp. 59-60, 88-89, 91, 30(b)(6) exhibit 14, p. 23

admissible, as comprising a statement made by an employee of the opposing party on a matter within the scope of that relationship while it existed.[45]

Cases involving actual notice under R.S. 9:2800.6 are few and far between, but the facts of this case are similar to those in *Jones v. Super One Foods,* decided by the Louisiana Second Circuit Court of Appeal. [46]  In *Jones,* a store employee had actual notice of a spill that had occurred mostly on the mat but also on the floor near the entrance.  Although the employee mopped it up, he acknowledged that the area was still wet when the plaintiff fell because it was known that liquid could seep under the mat and "squish out" when people stepped on it. The trial court imposed liability based on actual notice and that ruling was upheld on appeal.

In the present case, liability is clearer than in *Jones* because the tripping hazard, the split and raised the expansion joint, was known to exist and was reported to management.  But no remedial action was taken and no warning was placed to protect against a customer tripping and falling.  The condition in this case was not capable of being removed with ordinary maintenance, as in *Jones*.  The condition in this case required more aggressive action as was taken after the accident by the placing of duct tape to hold down the raised wood, or by removal and repair as was ultimately performed, or by placing a barricade, or by replacing a warning.  Moreover, this condition was reported to management who had ultimate responsibility for maintenance of the premises.  Yet, nothing was done prior to the accident to protect customers at a location which has the highest customer traffic and highest exposure to the tripping hazard.

---

[45] FRE, Rule 801(d)(2)(D)
[46] No. 33,683 (La. App. 2d Cir. 8/23/00); 774 So.2d 200

## CONCLUSION

For the foregoing reasons of fact and law, Plaintiff, SUSAN MICIOTTO, respectfully prays that Partial Summary Judgment be granted in her favor and that the defendant, Hobby Lobby Stores, Inc., be found liable for her accident on November 30, 2017.

Respectfully submitted,
**BART BERNARD**
**PERSONAL INJURY LAW FIRM**


 s/ David J. Calogero
David Calogero, Bar #01748
1031 Camellia Boulevard
Lafayette, Louisiana 70508
Telephone:    (337) 989-BART
Facsimile:    (337) 769-1623
david@bartbernard.com
Counsel for Plaintiff,
**Susan Miciotto**


## CERTIFICATE

I HEREBY CERTIFY that on August 3, 2020 a copy of the foregoing was transmitted to all counsel of record via e-mail.


s/David J. Calogero
**David J. Calogero, #01748**