UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **SUSAN MICIOTTO** | \* | **CIVIL ACTION NO. 6:19-CV-00735** |
| **vs.** | \* | **JUDGE TERRY A. DOUGHTY** |
| **HOBBY LOBBY STORES, INC., ET AL.** | \* | **MAG. JUDGE PATRICK J. HANNA** |

**RULING**

This is an action brought by Plaintiff Susan Miciotto ("Miciotto") against Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") seeking damages for personal injuries related to an incident that occurred on November 30, 2017, outside the Hobby Lobby store in Lafayette, Louisiana. Miciotto alleges that, as she exited the store, she tripped and fell on a warped or broken wooden expansion joint. Pending here is Hobby Lobby's Motion in Limine to Exclude Photographs [Doc. No. 89]. Hobby Lobby filed a supplemental memorandum in support of its motion [Doc. No. 100]. Miciotto has filed an opposition to the motion [Doc. No. 101]. Hobby Lobby has filed a reply to the opposition [Doc. No. 118].

Hobby Lobby seeks to exclude any photographs of the Hobby Lobby store that were (1) taken by Ladybugs Parking Lot Sweeping, Inc., ("Ladybugs") in April 2018, or (2) taken by Plaintiff's expert in June 2020. Hobby Lobby asserts that Miciotto will attempt to introduce these photographs at trial as a depiction of the condition of the sidewalk at the time of this incident, and, further, Miciotto's expert will likely rely on these photographs to render opinions about the condition of the sidewalk at the time of this incident. Because some of these photographs were taken five months after this incident occurred, and the rest were taken two and one-half years

later, Hobby Lobby argues that they are not an accurate depiction of the scene of this incident and thus are not relevant. Hobby Lobby asserts, further, that Darren Harris ("Harris"), who is believed to have taken the photographs on behalf of Ladybugs in April 2018, could not say whether Ladybugs' photographs depict the sidewalk outside the Hobby Lobby store, or the sidewalk outside the neighboring Mardel store, or the sidewalk somewhere in between. [30b(6) Deposition of Ladybugs Parking Sweeping, Inc., Doc. No. 89-4, pp. 66-70].

Additionally, in its supplemental memorandum, Hobby Lobby asserts that, on November 22, 2020, Miciotto's counsel produced additional photographs, which were believed to have been taken that same day. Since these photographs were taken three years after this incident, Hobby Lobby contends that they, too, are irrelevant as they do not show the condition of the store at the time that this incident occurred.

Miciotto responds that the photographs are relevant to proving one of the essential elements of her case, *i.e.*, failure to exercise reasonable care by Hobby Lobby. According to Miciotto, the conditions depicted in the photographs existed before the incident because the original construction was incomplete; the top of the two-piece wooden joint system was not removed, and a pourable sealant was never installed, allowing moisture to enter the joints and deterioration to occur.

Miciotto contends that the photographs at issue depict the widespread deterioration of the expansion joints, substantially similar to the condition which caused her fall. Therefore, according to Miciotto, the only question left in the reasonable care analysis is whether the conditions shown in the photographs were present prior to the date of accident, November 30, 2017. Miciotto asserts that this question is answered by her expert, Jay Chase, AIA. Chase states that it "appears" the building was constructed in 1984, and he opines that the signs of

deterioration of the expansion joints would have become noticeable within 8 to 10 years after installation, and, thus, it is more likely than not that all of the conditions shown in the photographs existed prior to the date of incident. [Chase Expert Report, Doc. No. 101-3].

Given Chase's expertise, Miciotto asserts that Chase can establish that the deterioration shown in the photographs did not all occur simultaneously or all within the five months between the date of accident and the date the photographs were taken. Miciotto further contends that this question is also answered by Allen Calais, the Hobby Lobby manager, who testified that he could not establish that the split expansion joints shown in the Ladybugs photos, came into existence after the accident. [Allen Calais Deposition Doc. No. 101-4, pp. 34-37]. Thus, Miciotto argues that the standard of relevance is met, particularly with regard to the issue of Hobby Lobby's failure to exercise reasonable care, and the widespread existence of problems with the expansion joints.

Miciotto asserts that the relevance and admissibility of post-accident photographs was decided in *Gobert v. Atlantic Sounding*, No. 15-650, 2017 WL 479215 (ED La. Feb. 6, 2017), where the District Court ruled that the standard of relevance in an evidentiary context is not a steep or difficult one to satisfy, and ruled to admit the photos at issue:

> Weeks Marine moves to exclude photographs and a videotape taken by plaintiff's counsel during his inspection of the vessel. The inspection occurred on a rainy day, and Weeks suggests that the photos are irrelevant and/or unduly prejudicial insofar as the photographs supposedly do not accurately depict the deck conditions on the *G.D. Morgan* at the time of the accident.
>
> As the photographs depict the accident site, they are relevant. See, e.g., *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014) (explaining "the standard of relevance in an evidentiary context is not a steep or a difficult one to satisfy"). Thus, the key question is whether the photographs and video should be excluded under Rule 403.

3

> The Court is not persuaded that the probative value of the photographs would be substantially outweighed by the risk of unfair prejudice. After all, Rule 403 is meant to be applied "sparingly," *Baker v. Can. Nat./Ill. Cent. R.R.,* 536 F.3d 357, 369 (5th Cir. 2008), and Weeks can mitigate any unfair prejudice through cross-examination by highlighting that it was raining on the day of inspection. The Court is also willing to consider providing a suitable limiting instruction should Weeks propose an appropriate one.
>
> Accordingly, even if it was dry on the day of the accident—a state of affairs seemingly belied by the supervisor's injury report indicating that the steps were wet and slippery on the day of the accident—the Court would still determine that the probative value of the photographs of the accident site on the *G.D. Morgan* is not outweighed by the risk of unfair prejudice. Weeks's motion to exclude the photos and video of the accident site is denied.

*Id.*, at *2.

Hobby Lobby replies that the *Gobert* case can be distinguished because there the admissibility of the photographs turned on whether the conditions depicted in the photographs were "substantially similar" to the conditions at the time of the accident. *Id.*, at *1. Unlike the photographs taken days after the incident in *Gobert*, the photographs at issue in this case were taken months and even years after the subject accident.

Hobby Lobby further replies that the photographs do not show the same or similar conditions as the time of this accident, as the photographs show only grey wood and some areas where maintenance has been performed. Chase agreed in his deposition that, at the time of his June 30, 2020 inspection, during which Chase took his photos, the site would have looked different from the time of the November 2017 accident, some two and one-half years earlier. [Jay Chase Depo., Doc. No. 118-1, p. 48]. While Miciotto relies on Chase's expert report to assert that the conditions depicted in the photographs existed prior to this accident, Chase admitted in his deposition that he could not say that they did. [*Id.*, pp. 72-73]. Thus, Plaintiff's claim that the conditions depicted are "substantially similar" to those at the time of this accident

4

is unfounded.

Hobby Lobby asserts, further, that the photographs' potential to cause prejudice or jury confusion warrants their exclusion. Miciotto admittedly seeks to introduce the photographs for purposes of establishing that Hobby Lobby failed to use reasonable care. She is clearly attempting to prejudice Hobby Lobby by portraying the premises as deteriorated and in a state of disrepair given the presence of older-looking wood. Yet, there is no proof that the conditions depicted in the photographs existed at the time of this incident. Additionally, there is no evidence that any of the expansion joints were warped to a state of needing repair and that Hobby Lobby was aware that were repairs were needed and failed to do so. Thus, according to Hobby Lobby, the photographs are merely being introduced to create prejudice and confusion.

Finally, Hobby Lobby asserts that it is unknown whether the photographs depict the area near the Hobby Lobby store or, instead, the area near the neighboring Mardel store. To the extent the photographs indeed show the area near the Mardel store, they are further irrelevant and have further potential to cause confusion.

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing Fed. R. Evid. 402). Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. Evidence which is not relevant is not admissible. FED. R. EVID. 402.

Pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

FED. R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403, 1972 Advisory Committee Note.

Miciotto's main justification for the photographs is to illustrate the condition of the sidewalk at the time of the accident. As in the case of a post-accident reconstruction, the admissibility of the photographs turns on whether the condition depicted in the photographs was "substantially similar" to the condition at the time of the accident. *See* 1 Muller & Kirkpatrick, Federal Evidence § 9:27. (Westlaw 2016). If the condition in the photographs was substantially similar to the sidewalk condition at the time of the accident, then the photographs will be helpful to the jury insofar as it will help the jury visualize the likely sidewalk condition at the time of the accident. If, on the other hand, the sidewalk condition was not substantially similar at the time of the accident, then the proposed photographs would simply be wasting both the jury's and the Court's time with a pointless and potentially prejudicial picture of a sidewalk.

Here, Miciotto has not established that the condition of the sidewalk at the time of the accident was substantially similar to the condition depicted in the photographs. The Ladybugs photographs were taken in April 2018, some five months after the incident. Further, the person who took the photographs admits that he is not sure whether they show the portion of the sidewalk where the incident occurred.

The 2020 photographs were taken two-and-a-half to three years after the incident. Miciotto asserts that her expert, Chase, will establish that the conditions depicted in the photographs existed before the incident. However, as indicated above, Chase agreed in his deposition that, at the time of his June 30, 2020 inspection, during which Chase took his photos, the site would have looked different from the time of the November 2017 accident, some two

and one-half years earlier. [Jay Chase Depo., Doc. No. 118-1, p. 48]. While Miciotto relies on Chase's expert report to assert that the conditions depicted in the photographs existed prior to this accident, Chase admitted in his deposition that he could not say that they did. [*Id.*, pp. 72-73]. While the photographs may be marginally relevant, any such relevance is substantially outweighed by the prejudice resulting from the jury reviewing photographs that do not depict the sidewalk condition at the time of the accident

Accordingly, for the foregoing reasons, Defendant Hobby Lobby's Motion in Limine to Exclude Photographs [Doc. No. 89] is GRANTED, and the photographs are excluded at trial.

MONROE, LOUISIANA, this 21st day of January, 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE