UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| SUSAN MICIOTTO | * | CIVIL ACTION NO. 6:19-CV-00735 |
| vs. | * | JUDGE TERRY A. DOUGHTY |
| HOBBY LOBBY STORES, INC., ET AL. | * | MAG. JUDGE PATRICK J. HANNA |

RULING

This is an action brought by Plaintiff Susan Miciotto ("Miciotto") against Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") seeking damages for personal injuries related to an incident that occurred on November 30, 2017, outside the Hobby Lobby store in Lafayette, Louisiana. Miciotto alleges that, as she exited the store, she tripped and fell on a warped or broken wooden expansion joint in the sidewalk. Pending here is Hobby Lobby's Motion in Limine to Exclude Jay Chase [Doc. No. 90]. Miciotto has filed an opposition to the motion [Doc. No. 96]. Hobby Lobby has filed a reply to the opposition [Doc. No. 120].

I.  BACKGROUND

Miciotto claims that Hobby Lobby either had actual notice of the condition of the sidewalk or had constructive notice due to the existence of the condition for such a period of time that it should have been discovered. [Doc. No. 1-1]. Miciotto retained Jay Chase ("Chase") to testify as an expert architect. Hobby Lobby moves to exclude Chase from testifying on the grounds that his opinions are inadmissible under *Daubert* because they are not based on any scientific methodology and instead are speculative and unreliable. Additionally, Hobby Lobby contends that Chase's opinions are nothing more than common sense, and, therefore, will not

assist the trier of fact.

Miciotto responds that the motion should be denied because Chase followed the methodology typical for premises liability cases and his opinions are not the result of unsupported speculation. Miciotto further responds that Chase's expert testimony will not intrude on the common sense of the jury but will, instead, provide assistance to the jury in deciding the case.

The motion is fully briefed, and the Court is prepared to rule.

**II.   LAW AND ANALYSIS**

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  When faced with expert testimony, the court must determine at the outset if the proponent of the evidence has proven its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 n.10 (1993) (citing FED. R. EVID. 104(a) and *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987)).  Courts have considerable discretion in deciding whether to admit or exclude expert testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997).

However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore Cty, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. Reliability and relevance, under Rule 702, are the hallmarks of admissible expert testimony. *Daubert*, 509 U.S. at 589; *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012). In making its reliability determination, the court must assess whether the "reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony

which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In assessing relevance, courts "must determine whether that reasoning or methodology can be properly applied to the facts in issue." *Id.* (citing *Daubert*, 509 U .S. at 592-93).

Ultimately, "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

Here, Hobby Lobby does not challenge Chase's qualifications. Rather, it challenges his opinions as being speculative and unreliable. It additionally contend his opinions intrude on the domain of common sense and will not assist the trier of fact. The Court will address each argument in turn.

### A. Chase's Opinions are Speculative and Unreliable

Hobby Lobby argues that, in his report, Chase offers "expert" opinions that are not based on any scientific methodology and instead are speculative and unreliable. Chase's report claims that the condition of the expansion joint presented an unreasonable risk of harm and more likely than not, existed prior to the subject accident and caused this incident to occur. Specifically, he concluded:

> 6. In my professional opinion, the condition of the expansion joint indicated in Exhibit 19 indicates failure of the joints in the location indicated. The damage to these joints did not occur overnight, happening over decades and is readily visible. Routine maintenance to the expansion joints was not performed. The lack of maintenance and the faulty construction lead to the wood being raised as indicated in the depositions causing this tripping accident to occur.

> 7. In my professional opinion, the condition of the accident location existed for days or even weeks prior to the November 30, 2017 accident.
>
> 8. In my professional opinion, the condition at the accident location presented an unreasonable risk of harm to the customers of Hobby Lobby.
>
> 9. In my professional opinion, the condition shown in the photos taken after the accident and prior to the repairs more likely than not existed prior to the accident of November 30, 2017.

[Chase Expert Report, Doc. No. 90-2, p. 11].

Hobby Lobby contends that these conclusions are completely speculative as they are primarily based upon Chase's site assessment that occurred in June 2020, nearly three years after the subject accident (and after repairs were completed), and photographs, the majority of which were taken months after this accident occurred. Since he does not have any data indicating that the condition pre-dated this accident, his conclusions are nothing more than pure speculation.

Further, Hobby Lobby argues that Chase claims that the allegedly protruding expansion joint violated various life and safety codes, making it unreasonably dangerous. His only information regarding the height of the alleged protrusion is a photograph and testimony from a lay witness. However, this data is unreliable as it is unknown whether this photograph depicts the spot where Plaintiff fell. Additionally, he relies on a lay witness who estimated that the piece of wood that she assumes caused plaintiff to fall was sticking up a few inches, though no measurements were taken.

Finally, Hobby Lobby contends that, according to Hobby Lobby's expert, Robert Bodet ("Bodet"), the various building codes Chase cited to in his report do not even apply to the building in question, as it was constructed before the various codes were enacted. Thus, Chase's opinions are not based on reliable data or methodology and for this reason, do not pass *Daubert*

muster.

Miciotto responds that Chase's proposed testimony is based on his experience, studies, and education, combined with a review of the relevant file materials. Therefore, his opinions are reliable. Chase was provided copies of the following documents to review as part of his retainer:

1. Deposition of Hobby Lobby
2. Deposition of Stephanie Cummings
3. Deposition of Susan Miciotto
4. Invoice from Ladybugs Parking Lot Sweeping, Inc.
5. Quote from Ladybugs Parking Lot Sweeping Inc.
6. Hobby Lobby work order number 85074
7. Hobby Lobby work order notes from May 2, 2018
8. Hobby Lobby customer incident packet
9. On-site accident report dated November 30, 2017
10. Petition for damages dated September 18, 2018
11. Photos of accident location
12. Photos of expansion joints
13. Photos of repairs
14. Weather reports, November 23 –30, 2017

[Chase Expert Report, Doc. No. 96-1, pp. 1, 2][1]

Chase reviewed the listed documents, visited the site, reviewed the applicable safety codes and building codes, and reached opinions and conclusions based upon his education, training and experience as an architect. Chase determined that the expansion joints were a two-piece wooden system. The top piece of wood was to have been removed after construction, allowing for the installation of an approved joint sealant, to keep moisture out of and from under the concrete walks. This was not done, permitting the intrusion of water into the joint causing changes to the wooden joint due to the thermal process of drying in the sun.

Chase determined that the Life Safety Code and International Building Code allow for a maximum ¼ inch difference in elevation on a walking surface. Therefore, based on the

---

[1] Hobby Lobby has filed an additional motion in limine with regard to certain of these photographs, [Doc. No. 89], which the Court is addressing in a separate ruling.

eyewitness testimony of Stephanie Cummings, that the warped expansion joint protruded two inches above the walking service, Chase was of the opinion that the warped and split expansion joint created a tripping hazard.

Miciotto shows that, based upon his investigation, Chase rendered the following professional opinions:

> 1. The concrete and expansion joints are original to the construction of the building from the 1983 –1984 time era.
>
> 2. The concrete was in good condition but the expansion joints showed significant deterioration from moisture intrusion through the years.
>
> 3. The expansion joints were not finished properly. The constant exposure to weather caused the expansion joint to warp in an upward direction.
>
> 4. The condition shown in the accident scene photograph is a tripping hazard since the walking surface was not level and the wood was raised at an elevation greater than ¼ inch, in violation of the Americans With Disabilities Act Design Guidelines, the Life Safety Code and the International Building Code
>
> 5. The condition shown in the accident scene photographindicates a failure of the expansion joint. The failure occurred over decades. Routine maintenance was not performed. The lack of maintenance and faulty construction led to the condition which caused the tripping accident to occur.
>
> 6. The condition at the accident location existed for days or even weeks prior to the accident.
>
> 7. The condition at the accident location presented an unreasonable risk of harm.
>
> 8. The conditions shown in the photos taken after the accident and prior to repair more likely than not existed prior to the accident on November 30, 2017.

[*Id.*, p. 11].

Citing *Serrano-Cordero v. Kroger, Tex. LP*, No. 4:10-cv-483, 2012 WL 3495376 (ED

7

Tx., Aug. 15, 2012), Miciotto contends that Chase's testimony should be admitted. In *Serrano-Cordero*, the court admitted the testimony of the plaintiff's expert after a *Daubert* analysis, in a premises liability and negligence case similar to the present. In admitting the expert testimony, the court ruled:

> The Court also finds that Kendzior's opinion is based on sufficient facts and data, and is reliable. Kendzior reviewed Plaintiff's deposition, performed a site inspection on April 9, 2012, interviewed Plaintiff, and reviewed photographs of the shoes Plaintiff was wearing at the time of his slip-and-fall. Further, it appears that Kendzior reviewed the policies and procedures of Defendant and attached a relevant portion of these policies to his expert report. In this case, the testimony is based mainly on the personal observations, professional experience, and training of the expert witness. A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin,* No. A–07–CA–044 AWA, 2008 U.S. Dist. LEXIS 36776, *32–33, 2008 WL 1990670 (W.D.Tex.2008); *see also Pipitone* [*v. Biomatrix, Inc.,* 288 F.3d 239 (5th Cir. 2002], 288 F.3d at 247(citing Kumho, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")). There is no need for an expert witness to conduct additional testing on the evidence in order to form an admissible opinion. Further, Defendant's concerns regarding the testimony of these expert witnesses may be addressed in cross-examination. "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Allison* [*v. NIBCO, Inc.*, 9:02-CV-172, (ED Tx. May 21, 2003], 2003 WL 25685229, at *1 n. 1 (*citing United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*,80 F.3d 1074, 1078 (5th Cir.1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*.
>
> The Court finds that Kendzior's expert report and opinions meet the requirements of Federal rule of Evidence 702 and are sufficiently reliable to form the basis for an expert opinion. Therefore, the Court finds that Defendant's motion to exclude the testimony, opinions, and reports of Kendzior should be denied.

*Id*. at *3.

With regard to Hobby Lobby's objection that Chase references building codes that were not in effect when the building was constructed, Miciooto argues that Chase does not apply the Americans With Disabilities Act, the Life Safety Code, and the International Building Code as construction standards in this case, but merely as a reference to the current standard of what constitutes a tripping hazard. Under these codes a ¼ inch change in elevation on a walking surface is considered a tripping hazard. Therefore, in the present case, where eyewitness testimony established that the split piece of wood was protruding approximately two inches above the walking surface, this condition should certainly be considered a tripping hazard.

The Court agrees with Miciotto that, in the present case, Chase performed a very similar analysis as the expert in *Serrano-Cordero*. His methodology is that utilized in a premises liability case. Chase's proposed testimony is based on his experience, studies, and education, combined with a review of the relevant file materials. He also reviewed eye-witness testimony. Therefore, his opinions are reliable.

Although Hobby Lobby argues that Chase's opinions are speculative because they are based on his site assessment, three years after the accident, Chase's report indicates that, based on his knowledge of building materials, exposure to weather, and other factors., he concluded that the split and raised expansion joint developed over an extended period of time. Therefore, Chase should be permitted to draw these conclusions based on his expertise.

The Court finds that Chase's testimony is neither too speculative nor too unreliable to be admitted into evidence. As indicated above, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

### B.     Chase's Opinions Intrude on the Domain of Common Sense

Hobby Lobby further argues that the instant case provides circumstances surrounding a trip and fall that are easily within the realm of a juror's understanding. Thus, Chase's report and testimony will not assist the fact-finder in understanding the evidence or in determining a fact in issue. Hobby Lobby contends that expert testimony is entirely unnecessary to assist the jury in making the determination of whether a condition presents an unreasonably dangerous condition and whether Hobby Lobby knew or should have known of the condition. Experts should not be allowed to testify when offering nothing more than opinions based on the same common sense possessed by jurors.

Miciotto responds that Chase's testimony will not intrude on the common sense of the jury but will provide assistance to the jury in deciding the case. Chase will provide testimony regarding the wooden expansion joint system, the failure to complete the expansion joint with a pourable sealant during original construction, the effects of weather on the deterioration of the expansion joints, and the length of time needed for development of splits and cracks in wood. His testimony will also address the various building codes which define a tripping hazard under current law, and the failure of Hobby Lobby to perform routine maintenance, leading to the condition involved in this accident. Therefore, Miciotto concludes, Chase's testimony will certainly provide assistance to the jury.

Hobby Lobby replies that Chase's "expert" conclusion boils down to that which is common sense: over time, wood can warp and may cause someone to trip if the wood breaks and protrudes above the walking surface. Hobby Lobby states that Chase admits that there is no way for a property owner to predict if or when that process may occur, and, it would be pure speculation to say when it may happen. [Chase Depo. Doc. No. 120-1, pp. 94-95]. Given that

Chase does not rely on any special skill, training, or education that will assist the trier of fact, his testimony is not helpful and should be excluded.

The Federal Rules of Evidence are clear that expert testimony should only be admitted when that testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. When the matter to be determined is within the common knowledge of the jury, and ordinary experience will render a jury competent to decide the issue, then expert testimony should not be admitted. *Alzubaidi v. Wal-Mart Stores, Inc.*, No. CIV. A. 90-1891, 1991 WL 99423, at *1 (E.D. La. June 3, 1991), citing *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir.1986); *Cohen v. Western Hotels, Inc.,* 276 F.2d 26, 27 (9th Cir.1960).

Although parties typically seek to exclude expert testimony on the basis that it is unreliable, *see, e.g.*, *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 587, the Court must also determine whether expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 591. To this end, courts generally exclude expert testimony on issues that the jury can "adeptly assess ... using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). The notes accompanying Rule 704 explain that experts may not offer "opinions which would merely tell the jury what result to reach" or that are "phrased in terms of inadequately explored legal criteria." FED. R. EVID. 704 advisory committee's notes. On the other hand, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Thus, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1212–13.

Here, the Court finds that, generally, Chase's proposed testimony does not intrude on the domain of common sense and that it may assist the fact-finder in understanding the evidence or determining a fact in issue. As Miciotto argues above, his testimony could address several issues regarding the wooden expansion joint system, the failure to complete the expansion joint with a pourable sealant during original construction, the effects of weather on the deterioration of the expansion joints, the length of time needed for development of splits and cracks in wood, and the alleged failure of Hobby Lobby to perform routine maintenance.

However, to the extent Hobby Lobby objects to Chase giving an opinion that the condition at the accident location *presented an unreasonable risk of harm*, the Court finds the motion should be granted. An expert may offer his opinion as to *facts* that, if found, would support a conclusion that the legal standard at issue was satisfied, but *he may not testify as to whether the legal standard has been satisfied*. Burkhart, *supra*.

Therefore, the motion should be granted in part and denied in part.

### III. CONCLUSION

For the foregoing reasons, Defendant Hobby Lobby's Motion in Limine to Exclude Jay Chase [Doc. No. 90].is GRANTED IN PART and DENIED IN PART. To the extent Hobby Lobby moves to exclude that portion of Chase's testimony that the condition at the accident location presented an unreasonable risk of harm, the motion is GRANTED, and that testimony is EXCLUDED. To any other extent, the motion is DENIED.

MONROE, LOUISIANA, this 21st day of January, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE